UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| DANIEL GUTIERREZ, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. 7:14-CV-430 |
| | § | |
| STATE FARM LLOYDS, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER

The Court now considers "Plaintiffs' Motion to Remand,"[1] filed by Daniel Gutierrez and Aurora Gutierrez ("Plaintiffs"). State Farm Lloyds ("State Farm"), Richard Freymann ("Freymann"), and Ben Paz ("Paz") (collectively, "Defendants"), have responded,[2] and Plaintiffs have replied.[3]

After considering the motion, response, reply, record, and relevant authorities, the Court **DENIES** the motion to remand and **DISMISSES** defendant Freymann as fraudulently joined.

### I. Factual Background

In April 2012, a storm struck Plaintiffs' house.[4] Plaintiffs submitted a claim to their insurance company, State Farm, which assigned Paz to adjust the claim.[5] State Farm is a citizen of Illinois, Colorado, and Georgia, while Paz is a citizen of Pennsylvania.[6] Hence, complete diversity existed between Plaintiffs on the one hand, and State Farm and Paz on the other.

---

[1] Dkt. No. 2.
[2] Dkt. No. 3.
[3] Dkt. No. 4.
[4] Dkt. No. 1, Attach. 2 at p. 6.
[5] *Id.* at p. 8, ¶18.
[6] Dkt. No. 1 at p. 3.

Dissatisfied with the handling of their claim, Plaintiffs then filed suit in state court against State Farm, Paz, and Paz' alleged supervisor Freymann. Freymann is a citizen of Texas.

State Farm and Paz removed to this Court under diversity jurisdiction, asserting Freymann was improperly joined, and Plaintiffs then filed the instant motion to remand. The Court now reviews the legal standards applicable to such a motion.

## II. Standards for Remand and Joinder

The Court does not have subject matter jurisdiction under 28 U.S.C. § 1332 unless the parties are completely diverse and the amount in controversy exceeds $75,000.[7] Here, the parties dispute only diversity, which turns on whether Freymann was properly joined. The Court notes that "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction."[8] Moreover, the Fifth Circuit has described the doctrine of improper joinder as "a narrow exception to the rule of complete diversity, and the burden of persuasion on a party claiming improper joinder is a heavy one."[9] "[T]he Court must resolve all ambiguities of state law in favor of the non-removing party."[10]

When considering whether a party was improperly joined, "[t]he court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant."[11] Alternatively, under certain circumstances, the Court may conduct a summary judgment-type inquiry instead: "[T]here are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder.

---

[7] 28 U.S.C. 1332(a).
[8] Acuna v. Brown & Root Inc., 200 F.3d 335, 339 (5th Cir. 2000) (citation omitted).
[9] Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007) (internal quotation marks and citations omitted).
[10] Id.
[11] Smallwood v. Ill. Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (citations omitted).

In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry."[12] Here, by attaching evidence to their motion to remand, Plaintiffs pierce their pleadings and invite a summary-judgment inquiry. Since Plaintiffs are on notice that the pleadings may be pierced, and piercing the pleadings will clarify the record, the Court will conduct a summary judgment-type inquiry.

### III. The Motion to Remand

*Plaintiffs' Pleadings against Freymann*

In their original complaint, Plaintiffs lumped Defendants together in blanket allegations of wrongdoing.[13] Plaintiffs clarify these vague pleadings in their motion to remand and in their reply. In essence, Plaintiffs assert three bases for Freymann's liability. First, in their motion to remand, they assert that Freymann is a member of "zone leadership,"[14] who directly supervised Paz and other adjusters and served as a "primary resource."[15] Second, Plaintiffs assert that Freymann improperly trained Paz and other adjusters.[16] Third, in their reply, Plaintiffs assert that Freymann participated in formulating State Farm's pricing policy for Texas, and that this pricing policy then led to their claim's poor handling.[17]

Plaintiffs argue that these alleged actions suffice to create liability under the Texas Insurance Code, because "'persons engaged in the business of insurance' like Freymann can be

---

[12] Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004).
[13] For instance, Plaintiffs alleged that "[t]ogether, Defendants State Farm, Freymann, and Paz set about to deny and/or underpay on properly covered damages. State Farm, Freymann, and Paz misrepresented to Plaintiffs that the adjuster's estimate" properly paid for the claim." Dkt. No. 1, Attach. 2 at p. 9, ¶20.
[14] Dkt. No. 2 at p. 2, ¶3.
[15] *Id.* at p. 5, ¶7.
[16] *Id.* at p. 6, ¶9 (quoting their original complaint: "Defendant Freymann failed to adequately train and supervise Defendant Paz resulting in the unreasonable investigation and improper handling of Plaintiffs' claim.").
[17] Dkt. No. 4 at pp. 3-10.

held liable under the Insurance Code."[18] The Court will now examine evidence pertaining to each of these three asserted bases for liability.

*Supervisory Liability and Failure to Train*

As evidence for their assertion that Freymann directly supervised the adjusters, Plaintiffs cite a deposition from a prior case in which Freymann testified, "All my adjusters call me, we go over issues, I ride with them. Those type of things is training."[19] Plaintiffs argue further that "Freymann was the ONLY State Farm claim manager in the Rio Grande Valley around the time of the hail events and during the aftermath of the hail claims adjusting matters. It logically follows therefore, that Freymann would have been and was involved in Plaintiffs' and the other State Farm policyholders' hail storm claims."[20]

In response, Defendants point out that Freymann testified a few sentences later in the same deposition that he did not supervise the State Farm personnel engaged in catastrophe response: "I didn't oversee [the catastrophe services personnel]. I saw the regular line unit functions."[21] Defendants also provide evidence that Freymann did not even begin work in the Valley until *after* Plaintiffs' claim had been adjusted.[22]

The Court finds the evidence leaves no genuine dispute of material fact assertions regarding Freymann's role within State Farm. Plaintiffs' selective quotation notwithstanding, Freymann's testimony that he supervised his team of adjusters does not show that he supervised hailstorm adjusters (that is, catastrophe adjusters). Moreover, Plaintiffs' assertion that Freymann "logically" must have supervised hailstorm adjusters is an unwarranted deduction without

---

[18] Dkt. No. 2 at p. 11, ¶27.
[19] Dkt. No. 2, Attach. 1 at p. 6 (internal citation: 81:3-5).
[20] Dkt. No. 2 at p. 14, ¶29. Plaintiffs also provide an organizational chart, which does not appear to have been obtained in discovery, purportedly showing that managers such as Freymann supervised catastrophe services personnel.
[21] Dkt. No. 2, Attach. 1 at p. 6 (internal citation: 83:12-14). Defendants provide more evidence to the same effect.
[22] Dkt. No. 3 at pp. 8-9.

evidentiary support. Businesses organize themselves in many ways; "logic" does not dictate that a regular business manager *must* supervise a special catastrophe unit. Further, Freymann's explicit testimony that he did not supervise hailstorm adjusters stands unrebutted. Finally, whatever Freymann's position in State Farm in general, he did not begin work in the Valley until after State Farm had handled Plaintiffs' claim. This discrete, clear, and unrebutted fact demonstrates that Freymann cannot be liable for supervising catastrophe personnel.

*Corporate Pricing Policy*

In their reply, Plaintiffs shift to an argument that because Freymann assisted in formulating an allegedly inadequate Texas pricing policy, which State Farm used in the wake of Hurricane Ike, he is liable under the Texas Insurance Code.[23] "Plaintiffs contend that Freymann still fills that role, and Defendants' evidence does not prove otherwise."[24]

Plaintiffs' argument here fails on several fronts. First, Plaintiffs did not plead this basis of liability in their original complaint, and they cannot augment their pleading in this fashion. Second, the fact that Freymann helped set Texas pricing policy several years ago shows nothing about his role now, and in particular shows nothing about his involvement with Plaintiffs' claim. Finally, this basis for liability rests on a deeply flawed legal argument, to which the Court now turns.

*A Legal Note*

Plaintiffs' legal theory consists almost entirely of their argument that "'persons engaged in the business of insurance' like Freymann can be held liable under the Insurance Code."[25] However, § 541.002, which defines "persons engaged in the business of insurance," is *not* a

---

[23] *See* Dkt. No. 4 at p. 3, ¶6 ("The policy initiatives conceived and implemented by Freymann and those beneath him in the State Farm corporate hierarchy led directly to the drastic underpayment of Plaintiffs' insurance claim.").
[24] Dkt. No. 4 at p. 3, ¶7.
[25] Dkt. No. 2 at p. 11, ¶27.

cause of action in itself.[26] Rather, it defines who may be sued under the causes of action contained in § 541.060 and elsewhere.

In fact, Plaintiffs cannot sue just any individual who happens to be involved in the business of insurance. The individual must have taken an action both related to their claim and proscribed under one of the causes of action contained in the Texas Insurance Code. Plaintiffs refer to the following provisions contained in Texas Insurance Code §541.060:

> subsection (1), misrepresenting to a claimant a material fact or policy provision relating to coverage at issue;
> subsection (2)(B), failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear;
> subsection (3), failing to promptly provide to a policyholder a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for the insurer's denial of a claim or offer of a compromise settlement of a claim;
> subsection (4), failing within a reasonable time to affirm or deny coverage of a claim to a policyholder or submit a reservation of rights to a policyholder;
> and subsection (7), refusing to pay a claim without conducting a reasonable investigation with respect to the claim.

While a manager directly supervising an adjuster's behavior could bear liability under one or more of these provisions, none of these provisions can possibly cover "failing to train" or "formulating pricing policy." Plaintiffs' novel and ambitious legal theory would allow them to sue individually anyone in State Farm who played a role in creating policy which they dislike. Plaintiffs have chosen to sue a Claim Team Manager now, but under their theory they could have chosen to sue the CEO as well. Nothing in the Texas Insurance Code so much as hints that plaintiffs may go backwards in time and up the corporate ladder to find the root cause of their

---

[26] Defining a "person" who may not engage in an unfair act or practice in the business of insurance (TEX INS. CODE §541.003), the insurance code says, "'Person' means an individual . . . including an . . . adjuster . . . ." (TEX INS. CODE §541.002(2)). In turn, "'Adjuster' means a person who investigates or adjusts losses on behalf of an insurer as an independent contractor or as an employee . . . [or] supervises the handling of claims . . . ." (TEX INS. CODE §4101.001(a)(1)(A)).

adjuster's current poor performance. Stretch the law as they may, Plaintiffs cannot stretch it to cover individuals who have not dealt directly with their claim.

*A Cautionary Warning*

After reviewing the record before the Court, the Court is convinced that Plaintiffs' counsel knew before filing the original pleading in this case that Freymann did not occupy the role they assigned him. The Freymann depositions to which Plaintiffs cite make this clear, and the fact that Plaintiffs switch theories in response to Defendant's response further supports this conclusion. The Court warns Plaintiffs' counsel that, pursuant to Federal Rule of Civil Procedure 11, by signing the original pleading he certified that the factual contentions therein had evidentiary support. Clearly they did not. Such conduct is sanctionable.

### IV. Holding

In this case, there are no disputed facts, only disputed conclusions. Plaintiffs bring no evidence and only bad legal arguments in support of their claim against Freymann. The summary judgment-type inquiry exists for precisely these circumstances; the Court will not reward plaintiffs who allege blatantly false facts merely to avoid diversity jurisdiction. The Court finds that the undisputed facts of this case demonstrate, contrary to Plaintiffs' deductions and protestations, that Freymann had no involvement with Plaintiffs' claim, and **DISMISSES** Freymann from the case as improperly joined.

The remaining parties are completely diverse from one another. The Court therefore **DENIES** the motion to remand.

IT IS SO ORDERED.

DONE this 4th day of September, 2014, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE